UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TRANS STATES HOLDINGS, INC., and
COMPASS AIRLINES, LLC,

        Plaintiffs,

    v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL,

        Defendant.

Case No.: 4:10-cv-2315

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs Trans States Holdings, Inc. ("Holdings") and Compass Airlines, LLC ("Compass") have filed a Motion for a Preliminary Injunction seeking to enjoin Defendant Air Line Pilots Association ("ALPA") from pursing Grievance No. CPZ-10—10 (MEC) to arbitration pending the Court's ultimate disposition of this lawsuit. Plaintiffs recognize there are scores of decisions emphasizing how public policy favors arbitration as the mechanism for resolving labor disputes in this country. Acknowledging that policy, this is one of those special cases where judicial intervention is warranted.

By pursuing Grievance No. CPZ-10—10 (MEC), ALPA is attempting to prosecute a grievance which with the background information provided herein, plainly seeks to persuade a neutral arbitrator to: 1) issue a potentially devastating decision impacting an entity that has never agreed to be bound by this arbitration process, 2) issue such a ruling even where there is no existing live controversy, and 3) render a decision that could potentially impact hundreds of airline employees' selection of their bargaining representative in complete derogation of the

NMB's "representation dispute" processes.  As discussed more thoroughly below, none of these results is legally acceptable.  Plaintiffs, accordingly, request that the Court GRANT their motion for a preliminary injunction barring any further prosecution of Grievance No. CPZ-10—10 (MEC) pending the Court's disposition of this lawsuit.

## II.  STATEMENT OF THE FACTS

The background facts supporting this Motion should not be in dispute.  Trans States Holdings, Inc. ("Holdings") is a privately-owned holding company that currently owns three separately operated FAA-certificated regional airlines:  Trans States Airlines, LLC ("TSA"), GoJet Airlines, LLC ("GoJet"), and Compass Airlines, LLC ("Compass").  (Hayes Dec. ¶ 2)  Compass represents Holdings' most recent acquisition having been acquired in a stock purchase agreement from its previous owner Delta Airlines in July 2010.  (Hayes Dec. ¶ 3)  Holdings has publicly indicated that it plans to continue to operate these three airlines as entirely separate entities. (Hayes Dec. ¶ 4)

The pilots employed by TSA and Compass are represented by the Air Line Pilots Association International ("ALPA").  Each pilot group has its own separate collective bargaining agreement ("CBA").  TSA and ALPA are currently negotiating a new CBA.  The Compass/ALPA CBA does not become amendable until April 2013.  (Hayes Dec.  ¶ 5)  The pilots employed by GoJet are represented by the International Brotherhood of Teamsters ("IBT"), not ALPA.  ALPA vehemently opposed Holdings' creation of GoJet and it was soundly defeated when the NMB held and election and the GoJet pilots voting overwhelmingly in favor of representation  by the IBT. The National Mediation Board ("NMB") formally certified IBT as the collective bargaining representative for the GoJet pilots on February 24, 2006.  (Hayes Dec. ¶ 6)  The first collective bargaining agreement between GoJet and IBT became effective on July 17, 2007 and will be

amendable on January 19, 2013.  (Hayes Dec. ¶ 7)  Since its election defeat in 2006, ALPA has repeatedly pressured TSA and Holdings to eliminate GoJet and/or displace IBT as the representative for the GoJet pilots.  (Hayes Dec. ¶ 8)

Section 1 of the CBA between ALPA and Compass contains "scope" language purporting to create certain obligations that are binding on a "successor" entity as that term is defined in Section 1.D.1.  (Hayes Dec. Exhibit A, p. 1-1)  Section 1.D.2 of the CBA contains language purporting to obligate Compass (and its parent) to ensure that any "successorship transaction" (another defined term in the CBA) include a written commitment by the successor that it will be bound by the Compass CBA, recognize ALPA as representative for "the pilots" and "employ pilots on the Compass System Seniority List.  (Hayes Dec. Exhibit A, p. 1-2)  It is undisputed that no such language was included in any of the purchase agreement documents associated with Holdings' acquisition of Compass in July 2010.  (Hayes Dec. ¶ 12)  Holdings is not a signatory to the Compass/ALPA collective bargaining agreement and has never made any commitment or representation that it is bound in any way by that Agreement.  (Hayes Dec. ¶ 11)

Grievance No. CPZ-10—10 (MEC) was filed by ALPA on November 29, 2010 following unsuccessful discussions between Holdings and ALPA attempting to work out their differences concerning the meaning of Section 1.D of the Compass/ALPA CBA and the significance of Compass/Delta not including any "agreement to be bound" language as part of Holdings' acquisition of Compass in July 2010.  (Hayes Dec. ¶¶ 13-14)  ALPA has not alleged, and, to the best of Plaintiffs' knowledge, there has been absolutely no harm or damage to ALPA or any Compass pilot resulting from Holdings' acquisition of Compass in July 2010 or Compass' failure to obtain Holdings' written commitments described in Section 1.D.2 of the Compass/ALPA Agreement.  (Hayes Dec. ¶15)

### III. ARGUMENT

The relevant factor governing whether a preliminary injunction should issue in this jurisdiction are well known. As summarized in *Dataphase Systems, Inc. v. C L Systems, Inc.* 640 F. 2d 109, 112 (8th Cir. 1981), these are: 1) the threat of irreparable harm to the movant, 2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant, 3) the probability that movant will succeed on the merits, and 4) the public interest. All of these factors cut strongly in favor of granting Plaintiff a preliminary injunction in this case.

**A.      There is a Substantial Likelihood Plaintiffs Will Prevail on the Merits.**

     1.      ALPA's Grievance is Not Substantively Arbitrable

          *a.      The Compass System Board of Adjustment Does Not Have Jurisdiction Over Holdings*

It is black letter law that a System Board of Adjustment ("SBA") created under the Railway Labor Act ("RLA") has no jurisdiction over a holding company that is not a party to the collective bargaining agreement at issue. In *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994), the Supreme Court held that grievances submitted to the SBA under the RLA pertain only to contract based rights, which are rights belonging exclusively to the two parties to the contract. Thus, ALPA's contractual rights are limited exclusively to Compass. Indeed, it has long been established that a party cannot be required to participate in arbitration, or *a fortiori* be bound by its outcome, unless it has agreed to do so. *See, e.g. Gateway Coal Co. v. United Mine workers of America*, 414 U.S. 368, 374 (1974)("No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so."); *United Steelworks of America v. Warrior & Gulf Navigation Co*,

363 U.S. 574, 582 (1960)("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

The Supreme Court has held that the question of whether a party has agreed to arbitrate a dispute is "undeniably an issue for judicial determination." *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 649 (1986). *See also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964)("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty."); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)("a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide").

The requirement that courts decide issues of substantive arbitrability is fully applicable to cases arising under the RLA. *See Indep. Ass'n of Continental Pilos v. Continental Airlines*, 155 F. 3d 685, 695 (3d Cir. 1998); *AFA v. USAir*, 960 F.2d 345, 349-50 (3rd Cir. 1992). Thus, just because Holdings acquired Compass does not mean that Holdings is "inherently bound by a successorship clause in a CBA to which it was not a party and did not otherwise agree." *Ass'n of Flight Attendants, AFL-CIO v. Mesa Airlines, Inc.* 210 Fed. App'x. 566, 568 (9th Cir. 2006).

Here, there is should be no dispute that Holdings is not obligated to arbitrate or ultimately be bound by any arbitration over the meaning of Section 1.D of the Compass/ALPA CBA. The principles of substantive arbitrability outlined above clearly preclude such an assertion.

> b.     *ALPA's Grievance Against Compass Is Not Justiciable*

Doubtlessly recognizing that an arbitrator has no jurisdiction over Holdings, ALPA has cleverly couched Grievance No. CPZ-10—10 (MEC) as seeking to require Compass to obtain and provide a signed agreement by Holdings binding it to the scope language in the Compass

CBA, plus "if applicable" make any Compass pilots adversely affected by the Company's [Compass'] action whole. (Hayes Dec. Exhibit B) Compass, of course, has zero power to force Holdings to sign anything. It would, accordingly, be an act of utter futility to attempt to press this point to arbitration knowing there is no "specific performance" remedy available.

The issue of damages is more complicated. Plaintiffs acknowledge that in theory an arbitrator could award damages against Compass in the event the arbitrator determined that company violated its contractual duty to obtain Holdings' written commitment regarding scope set forth in Section 1.D. The fact of the matter, however, is there are no damages. Neither ALPA or any Compass pilot has been injured in any manner by Holdings' acquisition of Compass and/or by Compass' failure to secure the subject scope commitments from Holdings. ALPA effectively concedes this point by referring in the grievance to seeking a make whole remedy "if applicable." ALPA, in short, has not established or even alleged that Holdings has done, or is about to do, anything that is or will be harmful to it or the Compass pilots related to the scope provisions in the Compass/ALPA CBA. ALPA's claim amounts to nothing more than an inchoate fear that, because Holdings has refused to obligate itself to be bound by Section 1.D, it might at some point in the indeterminate future take some unknown action that might be inconsistent with those obligations and detrimental to the Compass pilots. That fear, however, does not amount to a ripe controversy over which a court or arbitrator has jurisdiction.

Article III of the United States Constitution provides that parties attempting to invoke federal court jurisdiction must allege an actual case or controversy. *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974); *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968). It is a threshold requirement that a plaintiff allege that he has "sustained or is in immediate danger of sustaining some direct injury." *Massachusetts v. Mellon*, 262 U.S. 447, 448 (1923) (emphasis added). Furthermore,

"[t]he injury must be both 'real and immediate', not 'conjectural' or 'hypothetical'." *O'Shea v. Littleton* at 393-94.  The Sixth Circuit has described Article III's threshold requirements for federal jurisdiction as follows:

> The irreducible constitutional minimum of standing contains three requirements. First, and foremost, there must be alleged (and ultimately proven) an injury in fact--a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical.  Second, there must be causation--a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.  And third, there must be redressability— a likelihood that the requested relief will redress the alleged injury.  This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. *Cutshall v. Sundquist*, 193 F.3d 466, 471 (6th Cir.1999), quoting *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks, citations, and footnote omitted).

"Worrying that someone may harm you at some unspecified future date is not an actual or threatened injury, it is speculation." *Local Unions 165, Int'l Bhd. of Electrical Workers v. Ameritech Corp.*, 154 L.R.R.M. (BNA) 2889, 1996 WL 627720 at *4 (N.D. Ill. 1996) (*citing Schmidling v. City of Chicago*, 1 F.3d 494, 498-99 (7th Cir.), cert. denied, 510 U.S. 994 (1993).

Arbitrators, like courts, do not render advisory opinions.  As one well-known arbitrator stated:

> Otherwise, the grievance procedure would become clogged in answering questions that might never materialize.  Moreover, hypothetical questions do not present the precise factual backdrop that permits a careful and studied determination.  It is for these reasons that advisory opinions or declaratory judgments are not available in arbitration proceedings.

*County of Kent v. Kent County Deputy Sheriff's Association*, 101 LA 463, 466 (BNA), FMCS Case No. 92-23229 (1993)(Arbitrator D. Sugerman).  In the absence of ALPA's ability to claim or identify any harm associated with Holdings' unwillingness to bind itself in writing to the scope commitments set forth in Section 1.D, an advisory opinion is exactly what ALPA is

seeking in this Grievance.  Grievance No. CPZ-10—10 (MEC) is not justiciable or substantively arbitrable under these circumstances.

> 2.     ALPA's Grievance Is Barred as Implicating a Representation Dispute Subject to the Exclusive Jurisdiction of the National Mediation Board

Separate and apart from the issue of substantive arbitrability, ALPA's Grievance No. CPZ-10—10 (MEC) should be enjoined as implicating what is known in RLA parlance as a "representation dispute."

> a.     *The Classification Of Disputes Under The RLA*

As explained by Justice O'Connor, the RLA "defines three classes of labor disputes and establishes a different dispute resolution procedure for each." *Western Airlines, Inc. v. Int'l Bhd. Of Teamsters*, 480 U.S. 1301, 1302 (1987) (O'Connor, J., in chambers).  "Major" disputes are those which involve the formation of collective bargaining agreements; the resolution of those disputes is governed by Section 6 of the RLA, 45 U.S.C. § 156. *Id.*  "Minor" disputes, on the other hand, involve the application or interpretation of existing collective bargaining agreements, and are subject to arbitration before a System Board of Adjustment created by the union and airline. *Id.*

The third category of RLA disputes are "representation disputes."  Those involve "defining the bargaining unit and determining the employee representative for collective bargaining." *Western Airlines*, 480 U.S. at 1302.  The NMB has "exclusive jurisdiction over representation disputes." *Id.*  *Its* authority is founded in Section 2, Ninth of the RLA, 45 U.S.C. § 152, Ninth.  *See General Comm. Of Adjustment v. Missouri-Kansas-Texas R. Co.*, 320 U.S. 323, 337 (1943) ("However wide may be the range of jurisdictional disputes embraced within § 2, Ninth, Congress did not select the courts to resolve them.  To the contrary, it fashioned an

administrative remedy and left that group of disputes to the National Mediation Board.  If the present dispute falls within § 2, Ninth, the administrative remedy is exclusive.").

ALPA undoubtedly will argue that Grievance No. CPZ-10—10 (MEC) does not raise representation issues but only involves a "minor" disputes, i.e. interpreting Compass' obligations under Section 1.D of its CBA with ALPA.  The background facts surrounding this grievance as well as its potential ramifications utterly belie this claim.

First, ALPA has a lengthy history of trying to eliminate GoJet or at least displace IBT as the bargaining representative for the pilots at that airline.  On its face, Grievance No. CPZ-10—10 (MEC) quotes language in Section 1.D of the Compass CBA that if an arbitrator construed most favorably to ALPA and, in Plaintiffs' view, absurdly broadly (and if actually applicable to Holdings), could theoretically require Holdings as a "successor" of Compass to recognize ALPA as the collective bargaining representative of all of "Holdings employees" which ALPA could argue means all employees employed by any of Holdings' affiliated airlines including GoJet.  Such an interpretation, however fantastic, would effectively accomplish ALPA's long-standing purpose of supplanting IBT as the collective bargaining representative for GoJet's pilots.  Stretching the argument even further, ALPA could claim that as a "successor" of Compass, any future flying performed by Holdings' two other airlines, GoJet and TSA, or even flying performed by some airline that Holdings should acquire in the future, would have to be performed by pilots on the Compass seniority list.  Again, these claims are, from Plaintiff's perspective, utterly far-fetched, fantastic and absurd.  Without delving into the parties' recent discussions, suffice it to note nothing on the face of Grievance No. CPZ-10—10 (MEC) suggests ALPA is categorically eschewing these arguments.  The bottom line is that "on information and belief" ALPA's position with respect to Grievance No. CPZ-10—10 (MEC), admittedly stretched

to its extreme, threatens to eliminate another pilot group's democratically elected and NMB-certified representative at GoJet and/or any other representative of pilots at an airline Holdings might acquire in the future.  This is, in short, the "mother of all" representation disputes.  Grievance No. CPZ-10—10 (MEC), accordingly, must be enjoined.[1]

### b. The Broad Scope of "Representation Disputes"

While it may be overkill to elaborate further, courts have interpreted the prohibition against treading on the NMB's authority over representation disputes broadly, in light of that agency's noted expertise in determining representation-related issues.  Thus, even where a lawsuit or grievance raises a claim otherwise justiciable, if it implicates a representation dispute, it should be dismissed/enjoined.  *See, e.g., Int'l Bhd. of Teamsters v. Texas Int'l Airlines Inc. ("IBT v. Texas Int'l")*, 717 F.2d 157, 161 (5th Cir. 1983) (representation disputes are for the NMB, and "a court may not entertain an action involving such a dispute even if it arose in the context of other justiciable claims"); *Air Line Employees Assoc., Int'l v. Republic Airlines, Inc.*, 798 F.2d 967, 968 (7th Cir. 1986) *(per curiam)* (representational dispute falls within the NMB's jurisdiction "even though . . . couched in terms of enforcing the collective bargaining agreement"), *cert. denied*, 479 U.S. 962 (1986)(underlining emphasis added); *Int'l Fed. of Flight Attendants v. Cooper*, 141 F.3d 900, 903 (8th Cir. 1998) (state law tort claims arising out of union's alleged theft of another union's membership address list dismissed because they were "inextricably intertwined" with a representation dispute).

All doubts as to whether a representational question exists are cast in favor of deferring to the primary jurisdiction of the NMB.  Accordingly, the courts must dismiss actions or in this case

---

[1]       ALPA could obviously clarify in is answer to the Complaint, in discovery, or otherwise, that this it is <u>not</u> taking this position that the scope language in the Compass Agreement would ever obligate Holdings or any of its current affiliates (other than Compass) or any future affiliates to recognize and deal with ALPA in the manner Plaintiffs have described.  Such clarification, if actually forthcoming,, would certainly undermine if not eliminate Plaintiffs' entire representation dispute argument.

enjoin prosecution of a grievance where they cannot rule out the possibility that a representational dispute may exist, "even in the absence of a challenge by a competing union or an application to the NMB." *Air Line Pilots Assocs., Int'l v. Texas Int'l Airlines, Inc. ("ALPA v. Texas Int'l")*, 656 F.2d 16, 24 (2d Cir. 1981), *aff'g* 502 F. Supp. 423 (E.D.N.Y. 1980). *Accord Ford v. Air Line Pilots Ass'n, Int'l*, 268 F. Supp.2d 271, 281 (E.D.N.Y. 2003). *See also United Transp. Union v. Gateway Western R. Co.*, 78 F.3d 1208, 1213-14 (7th Cir. 1996) ("when the precise character of the dispute is in doubt (when the dispute, in other words, is only 'arguably' representational), a federal court should not proceed"). In *United Transp. Union v. United States*, 987 F.2d 784 (D.C. Cir. 1993), the court held that it was "frankly uncertain whether the NMB would, or should, have exercised jurisdiction over this case if it had been brought before it." *Id.* at 789. Because that made it an arguable representation dispute, and because the "NMB has unique competence the threshold question of whether a case involves matters within its exclusive jurisdiction," the proper course, the court held, was to "recognize that the NMB has primary jurisdiction to determine whether it has exclusive jurisdiction over the dispute." *Id.*

c.   *The NMB Has Exclusive Jurisdiction To Address Post-Acquisition Issues Involving The Attempted Application Of Pre-Acquisition CBAs*

In numerous cases, unions representing a craft or class of employees prior to an airline merger or acquisition have attempted to do exactly what ALPA is trying to do here:  enforce aspects of their CBAs against the employees of the other airlines involved in the transaction. The unions have argued that their disputes in such cases are major or minor, not representational. The courts, however, have looked beyond the labels the unions assigned to the disputes and found them to involve the representation disputes within the exclusive jurisdiction of the NMB. Indeed, Justice O'Connor observed that the "great weight of the case law supports the proposition that disputes as to the effect of collective-bargaining agreements on representation in

an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board." *Western Airlines*, 480 U.S. at 1305. *See also Ass'n of Flight Attendants*, 71 F.3d at 918 (it is "rather obvious that if two airlines merge and their employees in the same jobs are represented by different unions the federal courts lack jurisdiction over collective bargaining claims because a representation issue is necessarily implicated").

Here, we are dealing only with an acquisition and not a merger.  Holdings acquired Compass in July 2010 and has publicly stated it intends to operate Compass separate from its other airlines.  The fact remains ALPA's Grievance No. CPZ-10—10 (MEC) arguably seeks ultimately to enforce terms of the Compass/ALPA agreement against the pilots of GoJet and potentially elsewhere.  This is by definition a representation dispute.

> d.    *Western Airlines is Virtually On Point and Supports This Being a Representation Dispute*

The issue before the Court in *Western Airlines* was whether Western had breached its collective bargaining agreement with IBT by failing to secure the commitment of Delta Airlines, as part of its purchase of Western, to continue to honor the terms of a collective bargaining agreement covering IBT-represented employees at Western.  IBT sued to compel arbitration of its grievance asserting Western's contract violation.  The district court dismissed the suit on the grounds the issues raised by the grievance implicated representation issues that were within the exclusive jurisdiction of the NMB.  The Ninth Circuit Court of Appeals entered an interim order, literally a day before Delta's acquisition of Western was to be consummated, reversing the district court and directing arbitration of IBT's grievance.  Justice O'Connor, acting in the role of Circuit Justice, stayed the Ninth Circuit's ruling and reinstated the District Court's ruling.  The Court's subsequently published decision noted:

> The reasoning of every other Court of Appeals that has rule on the issue raised before the Ninth Circuit casts grave doubt on the validity of the Ninth Circuit's action in this case. The great weight of the case law support the proposition that disputes as to the effect of collective-bargaining agreements on representation in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board.

480 U.S. at 1305-06. Justice O'Connor proceeded to cite cases from the Fifth, Seventh, Second and Sixth Circuits supporting her conclusion. Her failure to cite any Eight Circuit case is not significant. The issue had simply not previously arisen in this jurisdiction. The *Cooper* case discussed *supra* is actually the only published Eight Circuit decision dealing with the issue of what constitutes a representation dispute in the parlance of the RLA. Its holding that even a state law tort claim arising in the context of one union allegedly stealing another union's employee address list qualifies as a representation dispute and is therefore preempted under the RLA is clearly factually distinguishable but informative as illustrating the breadth of the "representation dispute" doctrine. Justice O'Connor's decision in *Western,* on the other hand, is spot on factually and legally and strongly supports enjoining ALPA's instant grievance.

**B.      The Remaining Requirements for Granting a Preliminary Injunction Are Satisfied**

The remaining factors the Court must consider are the threat of irreparable harm to the movant; the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and the public interest.     *Dataphase Systems*, 640 F. 2d at 112. Insofar as the threat of irreparable harm to Plaintiffs is concerned, while there is a smattering of case law to the contrary outside the Eight Circuit, numerous decisions in this and other jurisdictions support Plaintiff's assertion that merely being forced to proceed with arbitrating a dispute that is fundamentally not arbitrable constitutes irreparable harm. In *McLaughlin Gormley King Company v. Terminix International Company*, 105 F.3d 1192, 1194 (1997) the Eight Circuit stated:

Terminix argues that the monetary cost MGK would incur in Arbitration is not legally recognized irreparable harm, citing cases such as *Emery Air Freight Corp. v. Local Union 295*, 786 F. 2d 93, 100 (2d Cir. 1986), in which irreparable injury was discussed only after the court concluded that the dispute was, in fact, arbitrable. In this case, our decision that the district court has properly undertaken to resolve the question of arbitrability makes this issue quite easy to resolve. If a court has concluded that a dispute is non-arbitrable, <u>prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award.</u> See *PaineWebber Inc. v. Hartmann*, 921 F. 2d 507, 514 (3rd Cir. 1990); *Nordin v. Nutri/Sys., Inc.*, 897 F. 2d 339 , 897 F. 2d 339, 343 (8th Cir. 1990), *U.S. v. Pool & Canfield, Inc.*, 778 F.Supp.1088, 1092 (W.D. Mo. 19991). (underlining emphasis added).

*See also Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997)(holding a party is "irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable."); *Accord Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F. 3d 125, 129 (2d Cir. 2003); *Barrack, Rodos & Bacine*, 2008 Dist. LEXIS 22026 at *12; *Penrod Mgmt. Group*, 2008 U.S. Dist. LEXIS 11793 at *11; *Kellogg Brown & Root Services v. Altanmia Commer, Mktg. Co. W.L.L.*, 2007 U.S. Dist. LEXIS 86285 at *47 (S.D. Tex. Nov. 21, 2007. As these cases demonstrate, the Eight Circuit and a host of well-reasoned decisions in other jurisdictions clearly recognize the heavy burden associated with reversing even an erroneous, poorly reasoned arbitration award coupled with the financial and time obligations associated with defending same constitute irreparable harm for purposes of this preliminary injunction analysis.

The issue of potential counter-balancing harm to Defendants is a no-brainer. ALPA cannot possibly claim that it is harmed by a decision temporarily enjoining it from prosecuting Grievance No. CPZ-10—10 (MEC) when it has been unable to identify any underlying harm associated with Plaintiffs' conduct. Again, this factor supports granting a preliminary injunction in this case.

The final factor involving "public interest" also strongly favors granting Plaintiffs' Motion.  The only "public interest" at risk in this case is the possibility that ALPA could use this grievance as a vehicle to accomplish its longstanding goal of supplanting IBT as the democratically elected representative of the pilots of that airline.  Plainly, no public interest is served by allowing this to happen.  Once again, this factor strongly favors granting Plaintiffs' Motion.

## IV. CONCLUSION

The overwhelming case law from this Circuit and others, demonstrates that ALPA's efforts to enforce its CBA against Compass and ultimately Holdings through Grievance No. CPZ-10—10 (MEC) should be enjoined both as lacking substantive arbitrability and as implicating a representation dispute within the exclusive jurisdiction of the NMB.  Plaintiffs' Motion for a Preliminary Injunction easily satisfies all of the traditionally accepted requirements for obtaining such relief in this jurisdiction.  Plaintiffs' Motion should, accordingly, be GRANTED.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART

*/s/Rodney A. Harrison*
Rodney A. Harrison, #83160
7700 Bonhomme Avenue, Suite 650
St. Louis, Missouri 63105
(314) 802-3935
(314) 802-3936 (FAX)
rodney.harrison@ogletreedeakins.com

Norman A. Quandt
*Admission Pro Hac Vice Pending*
Ford & Harrison LLP
271 17th Street, NW
Suite 1900
Atlanta, GA 30363
(404) 888-3845
(404) 888-3863 (FAX)
NQuandt@fordharrison.com

**ATTORNEYS FOR PLAINTIFFS**

9545855.1 (OGLETREE)